UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SHAWN RUIZ

VERSUS

WEEKS MARINE, INC.

CIVIL ACTION

NO: 23-05428

SECTION: T (2)

## ORDER AND REASONS

Before the Court are three Motions for Partial Summary Judgment covering issues of contractual indemnity, unseaworthiness, and certain non-pecuniary damages. The Court has reviewed the briefs, the record, and the applicable law. For the following reasons, Defendant and Third-Party Plaintiff Weeks Marine, Inc.'s ("Weeks Marine") Motion for Partial Summary Judgment on Contractual Indemnity, R. Doc. 64, is **GRANTED**, Third-Party Defendant E&E Machine Shop & Services, L.L.C.'s ("E&E Machine") Motion for Partial Summary Judgment, R. Doc. 66, is **DENIED**, and Defendant Weeks Marine's Motion for Partial Summary Judgment on Unseaworthiness and Certain Non-Pecuniary Damages, R. Doc. 68, is **GRANTED**.

## I. BACKGROUND

This is an action for negligence under the Jones Act, 46 U.S.C. § 30104, *et seq*., and for unseaworthiness under the general maritime law of the United States. R. Doc. 1. Plaintiff Shawn Ruiz was employed by Defendant Weeks Marine as a licensed boat captain at the time of the incident at issue. R. Doc. 1, p. 2. In July 2020, Plaintiff's vessel, the CR McCASKILL, was placed

1

in drydock, and he was assigned to work as a relief Captain at Defendant's ship yard facility in Houma, Louisiana. *Id.* Plaintiff alleges that, on September 26, 2020, he was struck by a dredge pipe in a workplace accident that caused "serious and permanently disabling injuries including a permanent brain injury (TBI)." *Id.*

On the date of Plaintiff's alleged injury, multiple employees of Third-Party Defendant E&E Machine were on site at Weeks Marine's Houma facility. R. Doc. 64-2, p. 5. "Weeks Marine regularly contracts with E&E Machine to provide dredge pipe welding services at Weeks Marine's Houma yard." R. Doc. 64-1, p. 3. In this case, Weeks Marine had issued Purchase Order No. 46608 ("Purchase Order") to E&E Machine on June 23, 2020. *Id.* E&E Machine performed the work requested in the Purchase Order between September 21, 2020, and September 27, 2020. R. Doc. 64-1, p. 4. On September 30, E&E Machine referenced the Purchase Order in its invoice to Weeks Marine for the work performed. *Id.*

The Purchase Order included in bold text on its front page:

> By accepting this PO and performing the work described herein, you accept the Terms & Conditions that follow. To the extent the parties are governed by a current, fully executed Master Agreement, the terms and conditions contained therein shall apply.

R. Doc. 64-4, p. 3.

Section 8 of the Terms and Conditions that followed on the pages after this disclaimer included the following indemnification provision:

> 8. INDEMNIFICATION: [E&E Machine] hereby releases and shall indemnify, defend and hold harmless Weeks Marine, and its subsidiaries and affiliates and the

2

officers, agents, employees, successors and assigns and authorized representatives of all the foregoing from and against any and all suits, actions, legal or administrative proceedings, claims, demands, damages, liabilities, interest, attorney's fees, costs, expenses, and losses of whatsoever kind or nature in connection with or incidental to the performance of this Purchase Order, whether arising before or after completion of the work hereunder and in any manner directly or indirectly caused, occasioned, or contributed to in whole or in part, or claimed to be caused, occasioned or contributed to in whole or in part, by reason of any act, omission, fault or negligence whether active or passive of [E&E Machine], its lower-tier suppliers, subcontractors or of anyone acting under its direction or control or on its behalf. The foregoing shall include, but is not limited to, indemnity for: (1) property damage and injury to or death of any person, including employees of Weeks Marine, Owner, or [E&E Machine]; and (2) the breach by [E&E Machine] of any representation warranty, covenant, or performance obligation of this Purchase Order. [E&E Machine's] aforesaid release, indemnity and hold harmless obligations, or portions or applications thereof, shall apply even in the event of the fault or negligence, whether active or passive, or strict liability of the parties released, indemnified or held harmless to the fullest extent permitted by law, but in no event shall they apply to liability caused by the willful misconduct or sole negligence of the party released, indemnified or held harmless. [E&E Machine] specifically waives any immunity provided against this indemnity by an industrial insurance or workers' compensation statute.

R. Doc. 64-1, pp. 3-4 (alterations in original); R. Doc. 66-8, pp. 3-4.

Under the Terms and Conditions, the Purchase Order also contained a choice of law provision in Section 12:

12. GOVERNING LAW AND JURISDICTION: This Purchase Order shall be governed by and construed and enforced in accordance with the laws of the State of New Jersey as well as the Uniform Commercial Code. All actions arising out of this Purchase Order shall be brought in the Superior Court of New Jersey, Union County vicinage. The parties hereby waive their right to a jury trial.

3

R. Doc. 66-8, p. 4.

At the time of the alleged incident on September 26, 2020, the crew staging dredge pipe to be welded together consisted of Plaintiff, other employees of Weeks Marine, and employees of E&E Machine, including Garrett John, the E&E Machine supervisor. R. Doc. 64-1, p. 5. Weeks Marine alleges that "[w]hen E&E Machine and its employees need dredge pipe moved from one area to another, an E&E Machine employee/the job supervisor request[s] assistance from Weeks Marine . . .. E&E Machine and its employees then instruct Weeks Marine personnel when to place pipe and where to position the pipe, so that E&E Machine can then weld the pipe together." R. Doc. 64-1, p. 6. Mr. John, who Weeks Marine claims was "supervising the dredge pipe welding operation," was standing on top of a piece of dredge pipe and instructing others, including Weeks Marine employees, where to place the dredge pipe and when to chock the pipe to keep it from rolling. R. Doc. 64-1, pp. 6-7. After the crew had moved one of the dredge pipes, Mr. John signaled to a Weeks Marine employee, Kevin Barton, to place a chock. R. Doc. 64-1, p. 7. Mr. Barton followed this instruction, after which Mr. Barton instructed Plaintiff to enter a pinch point and place another chock. *Id.* Soon thereafter, a piece of the dredge pipe rolled and struck Plaintiff, resulting in his alleged head injury. *Id.*

Since the date of the alleged incident, Plaintiff has continued to be treated for the "serious and debilitating injuries sustained in the accident," including a permanent brain injury (TBI). R. Doc. 1, pp. 2-3. Specifically, Plaintiff claims that the injuries to the back of his neck, his head, and other parts of his body have caused mental disabilities and/or changes, excruciating pain and

4

suffering, and changes in emotional and social behaviors, rendering him disabled and requiring

extensive medical care and treatment. R. Doc. 1, p. 4. Plaintiff "has incurred medical and

pharmaceutical expenses for the treatment of his injuries" and anticipates additional expenses for

future treatment for the rest of his life. R. Doc. 1, p. 5. Plaintiff characterizes his conditions as

being "permanently disabled from returning to work as a seaman." *Id.*

## II. PROCEDURAL HISTORY

Plaintiff filed the instant suit against Defendant Weeks Marine in 2023, asserting a

negligence claim under the Jones Act, 46 U.S.C. § 30104, *et seq.*, and an unseaworthiness claim

under general maritime law.[1] R. Doc. 1. In the Complaint, Plaintiff seeks:

> A. General damages, including past, present and future physical and mental pain,
> suffering and discomfort, mental anguish, permanent disability, and loss of
> enjoyment of life;
> B. Past, present and future cure/medical and pharmaceutical expenses;
> C. Past present and future maintenance;
> D. Past, present and future loss of income and loss of earning capacity;
> E. Penalties, attorney's fees and costs for the arbitrary termination of maintenance
> and cure;
> F. Past, present and future disabilities and/or residual and permanent physical
> impairments.

R. Doc. 1, pp. 5-6. Defendant subsequently filed a Third-Party Complaint against E&E Machine

pursuant to Rule 14(c) of the Federal Rules of Civil Procedure. R. Doc. 17. In the Third-Party

Complaint, Defendant "tender[ed] E&E Machine to Plaintiff under Rule 14(c) for all claims that

---

[1] The complaint erroneously cited the Jones Act as 46 U.S.C. § 688, which is now repealed. R. Doc. 1, p. 1.

Plaintiff may have against E&E Machine and for any liability, in whole or in part, that E&E Machine has to the Plaintiff, whether in tort, contract, or otherwise." R. Doc. 17, p. 25.

Defendant Weeks Marine has filed a Motion for Partial Summary Judgment on Contractual Indemnity against E&E Machine, pursuant to Federal Rule of Civil Procedure 56. R. Doc. 64. E&E Machine has filed its opposition in response to the Motion, R. Doc. 69, and Weeks Marine has filed its reply, R. Doc. 74. E&E Machine has also filed a Cross-Motion for Partial Summary Judgment. R. Doc. 66. Weeks Marine has filed its opposition in response to the motion, R. Doc. 71, and E&E Machine has filed its reply, R. Doc. 73. Weeks Marine has also filed a Motion for Leave to Supplement the Record, offering Exhibit 6, demonstrating email delivery of the Purchase Order from Weeks Marine Employee Adam Broussard to multiple E&E Machine employees. R. Doc. 76; R. Doc. 76-2, pp. 1-5. Weeks Marine's Motion and E&E Machine's Cross-Motion both concern the issue of contractual indemnity. Specifically, Weeks Marine asserts that "E&E Machine must defend and indemnify Weeks Marine against the claims asserted by Plaintiff, Shawn Ruiz[,] pursuant to [the Purchase Order] contract between Weeks Marine and E&E Machine." R. Doc. 64, p. 1. E&E Machine, on the other hand, asserts that the indemnity provision in the Purchase Order "is null, void, and unenforceable as a matter of Louisiana public policy or, in the alternative, that the indemnity provision contained in the contract is ambiguous and, therefore, unenforceable." R. Doc. 71, p. 1. E&E Machine's Memorandum in Opposition to Weeks Marine's Motion also includes a Motion to Strike statements based on the "beliefs," rather than firsthand knowledge, of Teresa Olivo, as well as "all legal conclusions set forth in the Declaration and report of Martin

6

Twomey." R. Doc. 69, pp. 17-18.

Defendant Weeks Marine has filed a separate Motion for Partial Summary Judgment on Unseaworthiness and Certain Non-Pecuniary Damages, pursuant to Federal Rule of Civil Procedure 56. R. Doc. 68. Ruiz has filed an opposition in response to the Motion, R. Doc. 70, and Weeks Marine has filed a reply, R. Doc. 72. Weeks Marine's motion concerns two issues. First, Weeks Marine asks the Court to dismiss Ruiz's unseaworthiness claim, stating that Plaintiff is unable to establish that any of Defendant's vessels, including the CR McCASKILL, were unseaworthy or that such unseaworthiness was a proximate cause of his alleged injuries. R. Doc. 68, p. 1. This specific issue is unopposed by Plaintiff. R. Doc. 70, p. 1. Second, Weeks Marine asks the Court to dismiss certain claims for non-pecuniary damages that are not available to Jones Act seamen. R. Doc. 68, p. 1. "While Plaintiff concedes that precedent dictates that a Jones Act seaman may not recover non-pecuniary damages," he opposes this portion of the Motion, arguing that Weeks Marine's "definition of non-pecuniary damages is overbroad." R. Doc. 70, pp. 1-2.

## III. LAW and ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). A court must hold "a factual dispute to be 'genuine' if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party and a fact to be 'material' if it might affect the outcome of the suit under the governing substantive law." *Voelkel McWilliams Const., LLC v. 84 Lumber Co.*, 2015 WL 1184148, at *5 (E.D. La. Mar. 13, 2015) (quoting *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989)). When assessing whether a genuine dispute as to any material fact exists, courts "consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). Accordingly, at the summary judgment stage, courts must view the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *See, e.g.*, *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 727 (5th Cir. 2018) (quoting *City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 603 (2015); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

Of course, "unsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (internal quotation and citation removed). Although the movant bears the initial burden of demonstrating the absence of a genuine issue of material fact, if it can carry that burden, the nonmoving party must "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 323-24. This burden is not satisfied by "metaphysical doubt as to the material facts" or only a "scintilla" of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.

8

1994) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994)). Summary judgment must thus be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. As the United States Supreme Court has explained, "[i]n such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. Courts "do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990)) (emphasis in original). Thus, "summary judgment is appropriate in any case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" *Id.* (quoting *Armstrong v. City of Dallas*, 997 F.2d 62 (5th Cir. 1993)) (emphasis in original).

### B. The Choice of Law Provision

In their respective motions, Weeks Marine and E&E Machine each contend that the interpretation of the Purchase Order and the Terms and Conditions therein are subject to a different set of laws: Weeks Marine insists that, per the listed Terms and Conditions, New Jersey law should apply, R. Doc. 64-1, pp. 13-14, whereas E&E Machine suggests multiple reasons why Louisiana law must be applied, R. Doc. 69, pp. 2-6. In the alternative, E&E argues that, even if New Jersey law were applied, Weeks has failed to meet its burden to overcome the presumption against

indemnity. R. Doc. 69, pp. 6-10.

A federal court in diversity jurisdiction shall apply the choice of law principles of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) ("The conflict of laws rules to be applied by the federal court in [a given state] must conform to those prevailing in [the forum state's] state courts. Otherwise the accident of diversity of citizenship would constantly disturb equal administration of justice in coordinate state and federal courts sitting side by side."). Thus, the Court must apply Louisiana's choice of law principles to determine which state's substantive law applies to the Purchase Order.

Louisiana law provides that an issue of conventional obligations, such as the Purchase Order in question, "is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue." La. Civ. Code art. 3537. Courts are to consider such policies in light of the following factors: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract; (2) the nature, type, and purpose of the contract; and (3) the policies of promoting commercial intercourse. *Id.* Choice of law provisions in a contract are generally presumed valid, unless the chosen law "contravenes the public policy" of the state whose law would otherwise apply. La. Civ. Code art. 3540. As explained by the Fifth Circuit Court of Appeals:

> In simplest terms, we must first determine which state's law would be otherwise applicable in the absence of the choice of law provision. We then determine whether application of the chosen law would contravene the otherwise applicable state's public policy. Our overall objective is to determine the state whose policies would be most seriously impaired if its law was not applied, and this is done by comparing

the strength and pertinence of the competing states' policies in light of the various factors set forth in Article 3537.

*Roberts v. Energy Dev. Corp.*, 235 F.3d 935, 939 (5th Cir. 2000). Accordingly, the Court must first determine which law would apply in the absence of the choice of law provision.

In this case, the Article 3537 factors strongly support E&E Machine's argument: E&E Machine is a domiciliary of Louisiana, R. Doc. 34, p. 2; though never formally signed, the Purchase Order was accepted by performance in Louisiana, *see* R. Doc. 64-1, p. 4 (citing Exhibit 2-B, Declaration of Teresa Olivo, at p. 2, ¶ 6; E&E Machine's Invoice No. 0026599); the work contemplated by the contract took place at Weeks Marine's ship yard in Houma, Louisiana, R. Doc. 64-1, p. 4; and although Weeks Marine's principal place of business is in New Jersey, R. Doc. 69-3, p. 1, the Purchase Order lists an address in Covington, Louisiana, R. Doc. 66-8, p. 1, and the business has registered a Baton Rouge, Louisiana office as its registered office in Louisiana with the Louisiana Secretary of State, R. Doc. 69-3, p. 1. Thus, Louisiana state law would be otherwise applicable in the absence of the Purchase Order's choice of law provision.

Next, the Court must consider whether application of the chosen law (i.e., New Jersey state law) would contravene the public policy of the otherwise applicable state (i.e., Louisiana). E&E Machine argues that this choice of law provision is invalid under both La. R.S. §§ 9:2779 and 9:27780.1. R. Doc. 69, pp. 2-5.

The Court will first consider La. R.S. § 9:2779, which E&E argues precludes application

11

of New Jersey law under the circumstances.[2] This statute, enacted by the Louisiana state legislature in 1991, states that for "construction contracts, subcontracts, and *purchase orders* for public and private work projects, [where] one of the parties is domiciled in Louisiana, and the work to be done and the equipment and materials to be supplied involve construction projects in this state," any provision that "[r]equires interpretation of the agreement according to the laws of another jurisdiction" is "null and void and unenforceable as against public policy." La. R.S. § 9:2779 (emphasis added).

Here, the Purchase Order meets the criteria for La. R.S. § 9:2779 to apply: the contract is a purchase order for a private work project, the fabrication of dredge pipe, R. Doc. 66-1, p. 9; one of the parties, E&E Machine, is a Louisiana domiciliary, R. Doc. 34, p. 2; the work contemplated and the equipment/materials involve construction projects in the state of Louisiana, as evidenced by the work which took place in the Houma ship yard, R. Doc. 66-1, p. 9; and Section 12 of the contract contains a provision that "[r]equires interpretation of the agreement according to the laws of another jurisdiction," the state of New Jersey, R. Doc. 64-9, p. 5.

Accordingly, the specific provision in Section 12 of the Purchase Order's Terms and Conditions mandating that New Jersey law must apply is "null and void and unenforceable" under La. R.S. § 9:2779, and Louisiana law controls the interpretation of the Purchase Order.

---

[2] The applicability of La. R.S. § 9:2780.1, commonly referred to as the Louisiana Anti-Indemnity Act, is considered in the following section.

### C.  The Indemnity Clause & Applicability of the LAIA

Next, E&E Machine contends that La. R.S. 9:2780.1, more commonly known as the Louisiana Anti-Indemnity Act ("LAIA"),[3] invalidates the indemnity clause of the Purchase Order. Under the LAIA, any provision in a construction contract "which purports to indemnify, defend, or hold harmless . . . the indemnitee from or against any liability for loss or damage resulting from the negligence or intentional acts or omissions of the indemnitee, its employees or agents, or the acts or omissions of a third party over whom the indemnitor has no control is contrary to the public policy of [Louisiana] and is null, void, and unenforceable." La. R.S. § 9:2780.1(B).  However, an additional insured provision is allowed if "there is evidence that the indemnitor recovered the cost of the required insurance in the contract price." La. R.S. § 9:2780.1(I)(1).

For purposes of the LAIA, the term "construction contract" refers to "any agreement for the design, construction, alteration, renovation, repair, or maintenance of a building, structure, highway, road, bridge, water line, sewer line, oil line, gas line, appurtenance, or other improvement to real property, or repair or maintenance of a highway, road, or bridge, including any moving, demolition, or excavation, except that no deed, lease, easement, license, or other instrument granting an interest in or the right to possess property will be deemed to be a construction contract even if the instrument includes the right to design, construct, alter, renovate, repair, or maintain improvements on such real property." La. R.S. § 9:2780.1(A)(2)(a). However, the term "shall not

---

[3] The LAIA is sometimes referred to as the Louisiana *Construction* Anti-Indemnity Act ("LCAIA") as a means of distinguishing it from the Louisiana Oilfield Anti-Indemnity Act ("LOAIA"), La. R.S. § 9:2780.

include any design, construction, alteration, renovation, repair, or maintenance of . . . [a]ny dirt or gravel road used to access oil and gas wells and associated facilities [nor] [o]il flow lines or gas gathering lines used in association with the transportation of production from oil and gas wells from the point that oil and gas becomes co-mingled for transportation to oil storage facilities or gas transmission lines." La. R.S. § 9:2780.1(A)(2)(b).

E&E Machine contends that the work it performed for Weeks Marine falls within the scope of the LAIA and therefore renders the indemnity clause of the Purchase Order's Terms and Conditions "null, void, and unenforceable under Louisiana law." R. Doc. 66-1, p. 10 (citing La. R.S. § 9:2780.1). Weeks Marine disagrees. R. Doc. 64-1, p. 14, n. 45; R. Doc 71, pp. 1-2. The parties' respective arguments for and against application of LAIA in this scenario primarily hinge upon the meaning of the term "construction contract" in the context of the statute. *See* R. Doc. 66-1, pp. 10-11; R. Doc. 77, pp. 1-3.

Specifically, E&E Machine argues that the work it provided pursuant to the purchase order—"welding and fitting services to assist with building lengths of 720-ft dredge pipe by welding, fitting, and combining smaller lengths of pipe"—falls within the meaning of a "construction contract" when supplemented with Black's Law Dictionary's definitions for "construction" and "structure." R. Doc. 66-1, pp. 10-11. Weeks Marine contends instead that the statutory definition only contemplates immovable property and that welding together pieces of movable property for use in dredging operations does not qualify as a "construction contract." R. Doc. 71, pp. 1-3. When interpreting Louisiana laws, "[t]he words of a law must be given their

14

generally prevailing meaning." La. Civ. Code art. 11. Weeks Marine notes that the use of the phrase "real property" in the statutory definition of "construction contract" suggests that the LAIA only applies to immovable property. R. Doc. 71, p. 3.

The Court need not determine whether the Purchase Order qualifies as a "construction contract" within the meaning of the LAIA because, even if it were, the plain language of the indemnity clause would not violate the statute. While the LAIA prevents an indemnitor from indemnifying an indemnitee for "any liability for loss or damage resulting from the negligence or intentional acts or omissions *of the indemnitee*, an agent or employee *of the indemnitee*, or a third party *over which the indemnitor has no control*," it does not prevent an indemnitor from indemnifying an indemnitee for *the indemnitor's* own negligence or intentional acts or omissions (or those of an agent or employee *of the indemnitor* or a third party over which the indemnitor *has control*). La. R.S. § 9:2780.1(B) (emphasis added); *see also 535 Iberville, LLC v. F.H. Myers Construction Corp.*, No. 2:24-CV-56, 2025 WL 522701, at *4 (E.D. La. Feb. 18, 2025) ("However, the LAIA applies only to provisions that demand the indemnitor hold harmless the indemnitee for actions of the *indemnitee*."); *Charter Oak Fire Ins. Co. v. Bremermann Mechanical, Inc.*, No. CV 2:21-1486, 2025 WL 958215 at *8 (E.D. La. Mar. 31, 2025) (applying the LAIA to nullify indemnity provisions in subcontracts only to the extent it asked subcontractors to indemnify general contractor for general contractor's negligence); *Ladner v. Ochsner Baptist Medical Center, L.L.C.*, 414 So.3d 572, 591 (La. App. 4th Cir. 2024) (declaring indemnity provision enforceable "only to the extent caused by the negligent acts or omissions of" the indemnitor).

Per the definitions provided in the LAIA,[4] Weeks Marine is the indemnitee of the Purchase Order's indemnification clause, and E&E Machine is the indemnitor. The Louisiana Civil Code provides that "[t]he words of a contract must be given their generally prevailing meaning." La. Civ. Code art. 2047. Additionally, "[e]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. Civ. Code art. 2050. A plain reading of the indemnification clause demonstrates that the provision in no way violates the LAIA:

> 8. INDEMNIFICATION: [Indemnitor] hereby releases and shall indemnify, defend and hold harmless [indemnitee], and its subsidiaries and affiliates and the officers, agents, employees, successors and assigns and authorized representatives of all the foregoing from and against any and all suits, actions, legal or administrative proceedings, claims, demands, damages, liabilities, interest, attorney's fees, costs, expenses, and losses of whatsoever kind or nature in connection with or incidental to the performance of this Purchase Order, whether arising before or after completion of the work hereunder and in any manner directly or indirectly caused, occasioned, or contributed to in whole or in part, or claimed to be caused, occasioned or contributed to in whole or in part, by reason of any act, omission, fault or negligence whether active or passive of [indemnitor], its lower-tier suppliers, subcontractors or of anyone acting under its direction or control or on its behalf. The foregoing shall include, but is not limited to, indemnity for: (1) property damage and injury to or death of any person, including employees of [indemnitee], Owner, or [indemnitor]; and (2) the breach by [indemnitor] of any representation warranty, covenant, or performance obligation of this Purchase Order. [Indemnitor's] aforesaid release, indemnity and hold harmless obligations, or portions or applications thereof, shall apply even in the event of the fault or negligence, whether active or passive, or strict liability of the parties released, indemnified or held harmless to the fullest extent permitted by law, *but in no event shall they apply to liability caused by the willful misconduct or sole negligence of the party released, indemnified or held harmless*. [Indemnitor] specifically waives

---

[4] "'Indemnitee' means any named party in the contract to whom indemnification is owed pursuant to the terms of the contract." La. R.S. § 9:2780.1(A)(3). "'Indemnitor' means any party to the contract who obligates himself to provide indemnification pursuant to the terms of the contract." La. R.S. § 9:2780.1(A)(4).

any immunity provided against this indemnity by an industrial insurance or
workers' compensation statute.

R. Doc. 64-4, pp. 5-6 (emphasis added).

The plain language of the indemnification clause does not require the indemnitor to hold
harmless the indemnitee for actions of the indemnitee. Stated otherwise, it clearly does not provide
for defense and indemnity for Weeks Marine's own negligence. Rather, it demands that E&E
Machine indemnify Weeks Marine for E&E Machine's own negligence or intentional acts or
omissions. Accordingly, the indemnification clause is valid and enforceable, and it does require
E&E Machine to provide indemnity for its own negligence, whether whole or in part. For these
reasons, Weeks Marine's Motion for Partial Summary Judgment on Contractual Indemnity against
E&E Machine, R. Doc. 64, is GRANTED insofar as it asks the Court to find that E&E Machine
owes contractual indemnity to Weeks Marine for Plaintiff's alleged accident and injuries. E&E
Machine's Cross-Motion for Partial Summary Judgment, R. Doc. 66, is DENIED insofar as it asks
the Court to find that Weeks Marine's contractual indemnity and defense claims are precluded.

### D. Determination of Fault

As correctly noted by E&E Machine, "the majority of . . . the evidence which Weeks
[Marine] claims is 'undisputed' and upon which [the movant] relies in support of its argument that
E&E [Machine] is concurrently at fault *is disputed by E&E*." R. Doc. 69, p. 12 (emphasis in
original). While Weeks Marine contends that E&E Machine employees were "directing and
controlling" the movement of dredge pipe at the time of the alleged incident, R. Doc. 65, p. 2, E&E

17

Machine maintains that "all such processes and procedures for constructing Weeks [Marine]'s dredge pipe were established by Weeks [Marine], not E&E [Machine]," R. Doc. 69, p. 14; R. Doc. 66-1, pp. 2-6. While Weeks Marine states that "an E&E Machine employee was directing and controlling the movement of pipe at the time of the alleged incident," R. Doc. 64, p. 2, both E&E Machine and Plaintiff state that Benjamin "BB" Collins, who they refer to as a Weeks Marine supervisor, initiated the signal/instructions that allegedly resulted in Plaintiff's injury, R. Doc. 69, p. 13; R. Doc. 70-1, p. 2.

The Court finds on the current record that there are genuine issues of material fact that preclude a finding as to the allocation of fault for Plaintiff's alleged injuries. Accordingly, the Court is unable to grant summary judgment on the issue, and the determination of fault for Plaintiff's alleged injuries must be reserved for trial. For these reasons, Weeks Marine's Motion for Partial Summary Judgment on Contractual Indemnity, R. Doc. 64, is DENIED insofar as it asks the Court to recognize that "concurrent fault undoubtedly exists."

### E.  E&E Machine's Requests to Strike

In its Memorandum in Opposition to Weeks Marine's Motion for Summary Judgment, E&E Machine requests that the Court strike from the Record "the identified, or to-be-identified, parts of the Declarations of Teresa B. Olivo and of Martin Twomey," which it characterizes as beliefs and legal conclusions rather than based on firsthand knowledge. R. Doc. 69, pp. 17-19. As noted by Weeks Marine in its Reply Brief, E&E Machine's request is procedurally improper. R. Doc. 74, pp. 8-10. Under the Federal Rules of Civil Procedure, "A request for a court order must

18

be made by motion. The motion must: (A) be in writing unless made during a hearing or trial; (B) state with particularity the grounds for seeking the order; and (C) state the relief sought." Fed. R. Civ. P. 7(b)(1). "It is axiomatic that a memorandum in opposition does *not* equate to a motion." *Lazard v. East Baton Rouge Par. Sch. Bd.*, No. CIV.A. 3:12-00552, 2013 WL 3772286 (M.D. La. July 16, 2013) (denying party's request to amend complaint in her memorandum in opposition) (emphasis in original); *see also Cotton Exch. Inv. V. Xcel Air Conditioning*, No. CV 16-17543, 2019 WL 3006401 (E.D. La. July 10, 2019) (denying consideration of request to reconsider prior ruling improperly raised in opposition); *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, No. 20-3087, 2022 WL 17980209 (E.D. La. Dec. 27, 2022) (declining to "consider the argument raised in Plaintiff's memorandum in opposition seeking relief").  As a result, the Court will not consider the arguments E&E Machine raises in its opposition asking the Court to strike the statements from the Record.

### F.  The Unseaworthiness Claim

Next, the Court turns to the unseaworthiness portion of Weeks Marine's Motion for Partial Summary Judgment, in which Defendant asks the Court to dismiss Plaintiff Ruiz's claim for unseaworthiness. R. Doc. 68, p. 1.

Under the general maritime law, a vessel owner owes a duty to the seamen assigned to a particular vessel to provide a seaworthy vessel. *See Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 498-500 (1971); *Smith v. Harbor Towing & Fleeting, Inc.*, 910 F.2d 312, 313 (5th Cir. 1990). To prevail on an unseaworthiness claim, a plaintiff must first demonstrate that the vessel

was unseaworthy. An unseaworthy condition may arise from several circumstances, including defective gear, appurtenances in disrepair, an unfit crew, an improper method of loading cargo, or an insufficient number of workers assigned to a particular task. *Usner*, 400 U.S. at 499. Once the plaintiff demonstrates the vessel's unseaworthiness, he must also prove that the "unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness." *Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1354 (5th Cir. 1988).

In its motion, Defendant points to the lack of evidence available for Plaintiff to establish that the CR McCASKILL, or any other vessel owned or operated by Weeks Marine was unseaworthy and that any alleged unseaworthiness was a proximate cause of his alleged injuries. R. Doc. 68, p. 1; R. Doc. 68-1, p. 4. First, Plaintiff's alleged injury occurred on land,[5] R. Doc. 68-1, p. 6. Second, Plaintiff testified that the vessel did not have anything to do with the incident, R. Doc. 68-1, p. 2. Plaintiff "does not oppose granting of summary judgment on the claims of unseaworthiness of a vessel." R. Doc. 70, p. 1. For these reasons, Weeks Marine's Motion for Partial Summary Judgment on Unseaworthiness and Certain Non-Pecuniary Damages is GRANTED insofar as it asks the Court to dismiss Plaintiff's unseaworthiness claim.

---

[5] As noted by Defendant, "the doctrine of unseaworthiness has been extended to permit a seaman . . . to recover from a ship owner for injuries sustained wholly on land, *so long as those injuries were caused by defects in the ship or its gear.*" *Exec. Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 260 (1972) (citing *Gutierrez v. Waterman S.S. Corp.*, 373 U.S. 206, 214-15 (1963)) (emphasis added). Both parties agree that is not the case here. *See* R. Doc. 68-1, p. 6; R. Doc. 70-1, pp. 2-3.

### G.  Certain Non-Pecuniary Damages

Finally, Defendant has asked the Court to dismiss "certain claims for non-pecuniary damages" that are not available to Jones Act seamen.[6] R. Doc. 68, p. 1. While Weeks Marine "does not dispute that seaman can recover damages for their own pain and suffering in connection with a personal injury under the Jones Act and the [g]eneral [m]aritime [l]aw," it "seeks dismissal of those categories of non-pecuniary damages that [it asserts] are unrecoverable as a matter of law, including mental anguish, emotional distress, scarring/disfigurement, and loss of enjoyment of life." R. Doc. 68-1, p. 2. Defendant cites the maritime law precedent set by the Supreme Court of the United States and the United States Court of Appeals for the Fifth Circuit in *Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990); *Scarborough v. Clemco Indus.*, 391 F.3d 660 (5th Cir. 2004); and *McBride v. Estis Well Serv., L.L.C.*, 768 F.3d 382 (5th Cir. 2014) (*en banc*).

It is undisputed here that Plaintiff is a Jones Act seaman and brings the present action under the Jones Act and general maritime law. R. Doc. 1, p. 1; R. Doc. 68, p. 1. In *Miles v. Apex Marine Corp.*, the Supreme Court declined to create from the bench "a remedy . . . that goes well beyond the limits of Congress' ordered system for recovery for seamen's injury and death," holding that because the estate of a deceased Jones Act seamen cannot recover lost future income under the Jones Act, "it cannot do so under general maritime law." *Miles*, 498 U.S. at 36. Citing *Miles,* the Fifth Circuit in *McBride v. Estis Well Service, L.L.C.* affirmed that a seaman may only recover

---

[6] Pecuniary damages are those "designed to compensate the plaintiff for an actual loss."  *McBride*, 768, F.3d at 390 (citing *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990); *Gulf, Colorado & Santa Fe Railway v. McGinnis*, 228 U.S. 173, 175 (1913)).

pecuniary losses under the Jones Act and under general maritime law. *McBride*, 768 F.3d at 391.

Plaintiff concedes that Jones Act seamen may not recover non-pecuniary damages under either scheme but asserts that "[Weeks Marine]'s definition of non-pecuniary damages is overbroad." R. Doc. 70, pp. 1-2. Specifically, Plaintiff states that Defendant does not cite any authority for the proposition that seamen are unable to recover damages for emotional damages, mental anguish, physical discomfort, loss of enjoyment of life, permanent disability, and disfigurement as part of his pain and suffering damages. R. Doc. 70, pp. 2-3.

Plaintiff cites multiple cases from the Fifth Circuit and its district courts to support his assertion. R. Doc. 70, p. 2. He notes that Defendant does not cite any authority for the proposition that seamen are unable to recover emotional damages from employers or third parties. *Id.*

First, Plaintiff cites the Fifth Circuit case *Naquin v. Elevating Boats, L.L.C.* to support his proposition that "seamen may recover damages for emotional damages." *Id.* In *Naquin*, a seaman sustained physical injuries in the scope of work at his employer's shipyard. 744 F.3d 927, 930-31 (5th Cir. 2014). In a Jones Act suit alleging the employer's negligence, the jury found the employer liable and awarded damages for past and future physical pain and suffering, past and future mental pain and suffering, and future lost wages. *Id.* at 931. Differing from the instant case, a relative of the *Naquin* plaintiff perished in the same incident, and "much of [his] claim for his emotional damages focused on his relative's death." *Id.* at 938. On appeal, the Fifth Circuit determined that jurisprudence limits damages for emotional harm to "the emotional harm suffered from being physically injured or the emotional harm suffered from *almost* being physically injured." *Id.* at 939

22

(citing *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 555-56 (1994)) (emphasis in original). Accordingly, the Court held emotional damages resulting from the death of the plaintiff's relative "are not compensable under the Jones Act and the evidence regarding those damages should have been excluded from the trial." *Id.* at 940. Because the Court was unable to discern what amount of the emotional damages award was attributable to the non-compensable harm, it retained the jury's liability finding but ordered a new trial on damages. *Id.* at 940-41. Because the Court overruled the award for emotional damages resulting from the death of another person but allowed an award for emotional damages in general, it clearly supports the proposition that seamen may recover emotional damages under the Jones Act.

Second, Plaintiff refers to *Blaauw v. Superior Offshore International, LLC*, in which a commercial diver and Jones Act seaman was injured during a saturation dive. No. CIV. 06-1380, 2008 WL 4224808, at *1 (W.D. La. Sept. 10, 2008). After finding the employer negligent under the Jones Act and general maritime law, the court noted that under both legal schemes, "an injured seaman is entitled to monetary recovery for past, present and future loss of earning capacity and wages, medical expenses and pain and suffering resulting from an injury." *Id.* at *14 (citing *Nichols v. Weeks Marine, Inc.*, 513 F. Supp. 2d 627, 637 (E.D. La. 2007)). The court stated in its opinion that "[a]n award for pain and suffering may include a sum for mental anguish and physical discomfort, and for the mental and physical effects of the injury on the plaintiff's ability to engage in those activities which normally contribute to the enjoyment of life." *Id.* at *15. Calculation of such an award "depends on the facts of the particular case." *Id.* Finding that the limitations caused

23

by the accident "will have a significant effect on [the plaintiff's] future lifestyle," the court awarded $450,000.00 in damages for pain and suffering.[7] *Id.* at *20. This amount included "his past present and future inability to engage in those activities which previously contributed to the enjoyment of his life." *Id.* Accordingly, *Blaauw* supports Plaintiff's assertion that "damages for loss of enjoyment of life as well as mental and emotional anguish" should not be barred "as part of pain and suffering damages." R. Doc. 70, p. 2.

Third, Plaintiff cites *Michel v. Total Transportation, Inc.*, in which the Fifth Circuit affirmed awards for "pain, suffering, and disability from date of accident" as well as "future pain, suffering, and disability." *Id.* (citing *Michel v. Total Transportation, Inc.*, 957 F.2d 186, 188 n.1 (1992)). Plaintiff alleges this decision supports the conclusion that while they are not always viewed as separate categories of damages, "impairment, permanent disability, and disfigurement are certainly relevant to a seaman's damages for pain and suffering." *Id.* However, Plaintiff's reliance on this decision is misplaced. While the pain, suffering, and disability damages referenced were not reversed, they were not under review in *Michel*. Rather, the *Michel* court was faced with questions regarding whether the plaintiff was a seaman, whether damages were available for loss of consortium, and whether the district court's award of $250,000 for loss of future earnings and earning capacity was clearly erroneous. *Michel*, 957 F.2d at 188-89, 191-92.

The jurisprudence presented by Plaintiff clearly supports that seamen may recover damages

---

[7] Specifically, the court noted that after losing much of the vision in his right eye, he became severely limited in his daily activities and could no longer engage in hobbies such as diving and other outdoor activities. *Id.* at *20.

for emotional damages and loss of enjoyment of life. Both parties agree that pecuniary damages for pain and suffering "can include the mental impact a physical injury has caused to a Jones Act seaman." R. Doc. 72, p. 3 (citing *Knight v. Kirby Offshore Marine Pac., L.L.C.*, 983 F.3d 172, 180 (5th Cir. 2020); *Bell v. Foster Wheeler Energy Corp.*, No. CV 15-6394, 2017 WL 889074 (E.D. La. Mar. 6, 2017)). The dispute between the parties concerns whether these damages should be carved out as separate categories of non-pecuniary damages or considered as a single award for past, present, and future pain and suffering. *Id.*; R. Doc. 70, pp. 2-3. Defendant refers to a large body of jurisprudence from other sections of this Court dismissing separate claims for damages beyond pain and suffering, including loss of enjoyment of life, mental anguish, emotional distress, bodily impairment, and disfigurement. R. Doc. 2, p. 2 (citing *Comeaux v. Atos Origin It Servs., Inc.*, No. CV 17-11273, 2018 WL 6331810, at *5 (E.D. La. Dec. 3, 2018); *In re Offshore Transp. Servs., L.L.C.*, 409 F. Supp. 2d 753, 754 n.1, 757 (E.D. La. July 14, 2005); *Wilson v. Marquette Transp. Co., LLC*, No. CV 22-3765, 2024 WL 3202344, at *2 (E.D. La. June 27, 2024); *Sanders v. Weeks Marine, Inc.*, No. CV 23-7317, 2024 WL 4346515, at *2-3 (E.D. La. Sept. 30, 2024)). Conformity with the standard practice of this Court mandates the dismissal of Plaintiff's additional claims for non-pecuniary damages, thus maintaining a single claim for past, present, and future pain and suffering. Considering the cases cited by Plaintiff in his motion, the Court further finds that such a decision would not be unduly prejudicial to Plaintiff because factors such as mental and emotional anguish and loss of enjoyment of life may still be considered when assessing damages for pain and suffering. For these reasons, Weeks Marine's Motion for Partial Summary

Judgment on Unseaworthiness and Certain Non-Pecuniary Damages is GRANTED insofar as it asks the Court to dismiss Plaintiff's claims for damages other than past, present, and future pain and suffering.

Accordingly,

**IT IS ORDERED** that Defendant and Third-Party Plaintiff Weeks Marine's Motion for Partial Summary Judgment on Contractual Indemnity, R. Doc. 64, is **GRANTED**, Third-Party Defendant E&E Machine's Cross-Motion for Partial Summary Judgment, R. Doc. 66, is **DENIED**, and Defendant Weeks Marine's Motion for Partial Summary Judgment on Unseaworthiness and Certain Non-Pecuniary Damages, R. Doc. 68, is **GRANTED**.

New Orleans, Louisiana, this <u>14th</u> day of October 2025.

_____
GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE

26